IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RICHARD LUCKEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:14-CV-594-CAN |
| v. | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying his claim for disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **REMANDED**.

### BACKGROUND

**I. PROCEDURAL HISTORY OF THE CASE**

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on June 26, 2012, alleging disability beginning on June 13, 2012, due to deep venous thrombosis, diabetes mellitus type II, coronary artery disease status-post percutaneous transluminal coronary angioplasty, and hypertension [TR 17, 103]. Plaintiff's application was initially denied by notice on August 1, 2012, and again upon reconsideration on September 13, 2012. *Id*. at 48, 56. Plaintiff timely requested a hearing before an Administrative

Law Judge ("ALJ"), and a hearing was held in Dallas, Texas on April 16, 2013. *Id*. at 28, 60. Plaintiff, represented by counsel, testified at the hearing, and vocational expert, Telesia Beasley ("Ms. Beasley") also testified at the hearing. *Id*. at 28, 90. On May 2, 2013, the ALJ issued his decision denying benefits and found Plaintiff not disabled at step five of the sequential evaluation process (discussed *infra*). *Id*. at 15-17. On June 21, 2013, Plaintiff sought review before the Appeals Council, and in conjunction with his request for review, Plaintiff submitted new evidence from Dr. Cynthia Stuart, D.O. *Id*. at 11, 173-76. The Appeals Council denied review on October 11, 2013, concluding the evidence was "about a later time," and finding the evidence "does not affect the decision about whether [Plaintiff was] disabled beginning on or before May 2, 2013," making the decision of the ALJ the final decision of the Commissioner. *Id*. at 2.

On September 16, 2014, Plaintiff filed his Complaint in this Court [Dkt. 2]. Plaintiff filed his Brief on December 30, 2014 [Dkt. 10], and the Commissioner filed her Brief in Support of the Commissioner's Decision on March 2, 2015 [Dkt. 11]. On March 11, 2015, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 12]. On March 12, 2015, Plaintiff filed his Reply [Dkt. 16], and on November 3, 2015, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 20].

## II. STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on September 27, 1968, and was forty-four years of age as of the date of the ALJ's decision. *Id*. at 32. At all relevant times, Plaintiff was classified as a "younger

person" [Dkt. 10 at 3]. 20 C.F.R. § 404.1563(c). Plaintiff has an associate's degree, and past relevant work experience as a chef, restaurant cook, and facility cook. *Id*. at 43.

## 2. *Medical Record Evidence*

Overall, Plaintiff's medical records generally demonstrate a history of diabetes, diabetic gastroparesis, hypertension status-post cardiac catheterization, deep vein thrombosis, and seizure disorder. In August of 2011, Plaintiff sought treatment from Dr. Cynthia Stuart, D.O. ("Dr. Stuart"), his treating physician, who noted symptoms of chest pain, abdominal pain, high blood pressure, fatigue, hypoglycemic attacks, numbness, and intractable vomiting and nausea [TR 631]. Dr. Stuart diagnosed Plaintiff with diabetes mellitus with hypertension and esophagitis, and prescribed medications. *Id*.

On March 6, 2012, Plaintiff underwent a left heart catheterization with ventriculography which revealed a 72% stenosis in the left anterior descending artery. *Id*. at 1259-60. Thereafter, Plaintiff returned to Dr. Stuart for treatment, who noted "good compliance with treatment," but poor diabetic and hypertension control. *Id*. at 690. On April 29, 2012, Plaintiff was rushed to Baylor Regional Medical Center for severe chest pain, and physicians noted slightly elevated hypertension and "labile" diabetes mellitus that was "not very well controlled." *Id*. at 1948. Baylor physicians increased Plaintiff's medications, and advised him to remain compliant with his diet. *Id*. However, Plaintiff was again hospitalized on May 3, 2012, due to chest pain, vomiting, and nausea – despite reporting full compliance with his medications and treatment plan. *Id*. at 700. Plaintiff was stabilized and discharged two days later with instructions to follow-up with his cardiologist. *Id*. at 702. Plaintiff again was admitted to the emergency room on June 4, 2012, and July 2, 2012, with chest pain and nausea, which was again attributed to diabetic gastroparesis. *Id*. at 712-13, 2138. At the emergency room visit on July 2, 2012,

Plaintiff's blood pressure was abnormally elevated, and Plaintiff was assessed with malignant hypertensive heart disease, and "very brittle" diabetes mellitus with some question of compliance. *Id*. at 2141. Plaintiff's insulin dosage was adjusted, and Plaintiff was advised at that time to avoid alcohol and follow-up with his primary care physician. *Id*. Plaintiff again returned to the emergency department on July 30, 2012, with diabetic gastroparesis and intractable vomiting, and Baylor staff noted a "significantly elevated blood pressure." *Id*. at 1798, 1802. Again, Plaintiff was stabilized, medications were adjusted, and Plaintiff was instructed to continue compliance, but still, Plaintiff returned to the emergency room on August 13, 2012, with chest pain, abdominal pain, nausea, and vomiting, which physicians once again attributed to underlying gastroparesis. *Id*. at 1746.

Plaintiff returned to the Baylor emergency room on February 9, 2013, after an unexpected seizure episode, and physicians noted elevated blood pressure, blood sugars, and triglycerides. *Id*. at 2159. Baylor physicians ordered an MRI study of the brain, which revealed mild fluid-attenuated inversion recover ("FLAIR") signal abnormality suggestive of microvascular ischemic changes. *Id*. at 2143. Plaintiff was stabilized and discharged two days later with a prescription for an anti-epileptic medication. *Id*. at 2159. The attending physician at Baylor noted that Plaintiff's diabetes remained poorly controlled. *Id*.

### a. *New Evidence from Dr. Stuart*

Following the hearing and an unfavorable decision by the ALJ, Plaintiff submitted additional evidence to the Appeals Council, including additional medical records from his treating and examining physician, Dr. Stuart [Dkt. 10 at 5-6].[1] *Id*. at 2176-2184. Plaintiff's new medical records from Dr. Stuart include a physician's statement in which she reported treating

---

[1] Prior to the ALJ's decision, Plaintiff submitted some of Dr. Stuart's medical records pertaining to the relevant time frame, and the ALJ did have those records to consider in reaching his decision [TR 625-72, 2094-99, 2171-74].

ORDER – Page 4

Plaintiff, since August of 2011, for uncontrolled diabetes mellitus, diabetic gastroparesis, and hypertension; the ALJ had no opportunity to consider this statement at hearing, since such records were not provided to the ALJ prior to his decision [Dkt. 10 at 7].

The additional records reflect that Dr. Stuart considered Plaintiff's prognosis "poor for meaningful improvement" [TR at 2176]. Dr. Stuart reported that Plaintiff's chest pain and other symptoms would frequently interfere with his attention and concentration needed to perform even simple tasks. *Id*. at 2177. Moreover, Dr. Stuart found that Plaintiff was limited to sitting for less than two hours and walking/standing for less than two hours over an eight-hour period, while he could sit or stand for ten minutes at a time. *Id*. Dr. Stuart opined that Plaintiff would require unscheduled breaks during an eight-hour day, and reported Plaintiff could occasionally lift less than ten pounds. *Id*. at 2178. Dr. Stuart also recommended Plaintiff avoid all exposure to cigarette smoke, and moderate exposure to extreme cold, soldering fluxes, solvents and cleaners, fumes, odors, gases, dust, and chemicals. *Id*. at 2179. Dr. Stuart also indicated that Plaintiff's symptoms began as early as March of 2012. *Id*.

### 3. *Hearing Testimony*

#### a. *Plaintiff's Testimony*

At the hearing before the ALJ on April 16, 2013, Plaintiff testified that his disabilities originate from an abdominal condition, blood clots, cholesterol, diabetes, gastroparesis, heart problems, and high blood pressure. *Id*. at 36. Plaintiff testified that he resides with his wife and three children, and his wife assists him with all transportation because his license is currently suspended. *Id*. at 33. Plaintiff testified that he has an associate's degree in culinary arts, and that his past relevant work for the time period spanning 2000 through 2011, is as a chef in various capacities. *Id*. at 34-35. Plaintiff further testified that he would be unable to return to his prior

work as a chef because he is no longer capable of being on his feet all day. *Id*. at 36. Plaintiff testified that he can stand on his feet for about thirty minutes at a time for a total of two hours each day, and sit for about ten minutes at a time, until he is overcome with abdominal pain and must lay down. *Id*. at 37-38. Plaintiff testified that his abdominal pain causes nausea, vomiting, and diarrhea, which is a daily occurrence for him. *Id*. Plaintiff also testified that, in 2012, he reduced his drinking to two drinks of vodka per week. *Id*. at 41. Plaintiff further testified that he has seizures, but takes medication to help control such seizures. *Id*. at 42.

### b. *Vocational Expert Testimony*

At the hearing, Ms. Beasley testified as a vocational expert. *Id*. at 42. The ALJ asked Ms. Beasely to describe Plaintiff's work history, which she classified into three positions: (1) kitchen chef (which is light work with a Specific Vocational Preparation ("SVP")[2] of 7); (2) restaurant cook (which is medium work with a SVP of 7); and (3) facility cook (which is medium work with a SVP of 7). *Id*. The ALJ then asked Ms. Beasley a hypothetical question that incorporated Plaintiff's age, work history, a high school education, and asked Ms. Beasley to assume that the hypothetical individual was capable of performing a full range of sedentary work. *Id*. at 44. The ALJ asked Ms. Beasley if the hypothetical individual could perform Plaintiff's past relevant work, and Ms. Beasley answered in the negative. *Id*.

---

[2] "SVP" refers to the "specific vocational preparation" level which is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, page 1009 (4th ed. 1991). Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

## III. FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After the prescribed five-step sequential analysis, the ALJ denied Plaintiff's request for benefits on May 2, 2013 [TR 15-23]. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 13, 2012, the alleged onset date. *Id.* at 17. At step two, the ALJ found that Plaintiff has the severe impairments of deep venous thrombosis, diabetes

mellitus type II, coronary artery disease status-post percutaneous transluminal coronary angioplasty, and hypertension. *Id.* However, at step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found that Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). *Id.* Continuing the step four analysis, the ALJ then determined that Plaintiff is unable to perform any past relevant work. *Id.* at 22. Notwithstanding, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that Plaintiff could perform. *Id*. at 22-23. Accordingly, the ALJ concluded Plaintiff was not disabled from June 13, 2012, through May 2, 2013. *Id*. at 23.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F. 2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

On appeal, Plaintiff asserts two issues: (1) that Defendant's final disability determination is not supported by substantial evidence because new evidence was submitted to the Appeals Council that contradicts the ALJ's findings; and (2) that substantial evidence does not support the residual functional capacity finding of the ALJ that Plaintiff can perform the "full range of sedentary work" [Dkt. 10 at 4]. The ALJ issued a decision on May 2, 2013 [TR 15-23], and Plaintiff submitted new evidence on June 21, 2013. *Id*. at 11. The new evidence consists of records from treating and examining physician Dr. Stuart, which Plaintiff alleges demonstrate Plaintiff's physical limitations are much more severe than those included by the ALJ in his residual functional capacity finding. *Id.* at 17, 2177-78. Plaintiff argues that the new evidence merits review because it is both "new" and "material," and "undermines the decision" of the ALJ such that the ALJ's decision is not supported by substantial evidence [Dkt. 10 at 7-12]. In Response, the Commissioner argues that (1) the Appeals Council sufficiently addressed the new evidence from Dr. Stuart; (2) Dr. Stuart's report dates after the ALJ's decision, and is therefore not material; and (3) even if Dr. Stuart's report were material, it would not have changed the outcome because it is contrary to the evidence of record [Dkt. 11 at 4-7]. The Commissioner further contends that substantial evidence supports the ALJ's decision that Plaintiff can perform the "full range of sedentary work." *Id*. at 7-11. The Court first considers Plaintiff's argument

that the new evidence submitted to the Appeals Council contradicts the ALJ's findings and requires remand.

**NEW EVIDENCE SUBMITTED TO APPEALS COUNCIL**

In the instant case, the Appeals Council accepted and acknowledged receipt of the new evidence, but determined not to alter the ALJ's decision [TR 1-2]. Specifically, the Appeals Council stated that it considered the additional evidence and whether the ALJ's findings and/or conclusions were contrary to the weight of the evidence of record. *Id*. The Appeals Council further stated, as follows:

> We also looked at treatment notes from Dr. Cynthia Stuart, May 28, 2013 to October 16, 2013 (16 pages), treatment notes from Dr. Cynthia Stuart, dated May 28, 2013 (3 pages), treatment notes from Baylor Regional Medical Center at Plano, May 15, 2014 to June 6, 2014 (118 pages), and treatment notes from Dr. Cynthia Stuart dated April 17, 2014 (8 pages). The Administrative Law Judge decided your case through May 2, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 2, 2013.

*Id*. at 2. Thus, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, finding "this information does not provide a basis for changing the [ALJ's] decision." *Id*.

Under the Social Security Act, courts may review the final decision of the Commissioner. 42 U.S.C. § 405(g). The final decision encompasses the Appeals Council's denial of review, as well as new evidence submitted to the Appeals Council. *Williams v. Astrue*, No. 4:11-cv-483, 2013 WL 1282517, at *3 (E.D. Tex. Mar. 27, 2013) (citing *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005)). The Social Security regulations permit claimants to submit new evidence to the Appeals Council when requesting review of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b)(1); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331, 335 (N.D. Tex. 2003). The Appeals Council considers all evidence in the record, as well as any new and material evidence it receives which relates to the period on or before the date of the

ALJ's decision, in deciding whether to grant a claimant's request for review. 20 C.F.R. § 404.976(b); *see also Williams*, 2013 WL 1282517, at *3 (citing *Rodriguez*, 252 F. Supp. 2d at 336). When reviewing new evidence, the Appeals Council must follow the same rules as the ALJ (specifically, those pertaining to the weight to be given to such opinions). 20 C.F.R. § 404.1527(e); *Williams*, 2013 WL 1282517, at *3.

The Social Security regulations provide "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision," and that "[t]he Appeals council shall evaluate the entire record including the new and material evidence submitted." 20 C.F.R. § 404.970(b); *see also* 20 C.F.R. § 404.976(b)(1). Accordingly, and as an initial matter, the question the Court must determine is whether the additional evidence from Dr. Stuart submitted by Plaintiff to the Appeals Council was, in fact, new and material. *Id*.; 20 C.F.R. §§ 404.970(b), 404.976(b)(1).

The evidence submitted by Plaintiff to the Appeals Council includes additional evidence from Dr. Stuart, consisting of a May 28, 2013 "Diabetes Mellitus Residual Functional Capacity Questionnaire" [TR 2176-84]. The questionnaire is a combination of fill-in-the-blank questions, and check-the-box questions in which the physician completing the questionnaire can describe their individual assessment of the physical limitations of the claimant. *Id*. For example, when describing the patient's symptoms the physician can select from a variety of common symptoms affecting those with diabetes mellitus, but the form also allows for written answers regarding a physician's diagnosis, prognosis, other symptoms, and earliest date of onset. *Id*. Dr. Stuart completed the form in its entirety, and made specific written notations in addition to her check-the-box responses, which will be discussed in further detail *infra*.

### A. "New" and "Material"

The Court first must consider whether Dr. Stuart's evidence is "new." *Rodriguez*, 252 F. Supp. 2d at 336. Dr. Stuart's evaluation was conducted on May 28, 2013, and thus is certainly new, as it could not have been submitted to the ALJ. The Court must also determine "materiality";[3] comprised within that analysis is: (1) whether the evidence relates to the period for which disability benefits were denied; and (2) whether there is a reasonable probability that the new evidence would change the outcome of the case. *Rudd v. Commissioner*, No. 4:14-CV-104, Dkt. 17, at *14 (E.D. Tex. September 2, 2015) (citing *Nehlig*, 40 F. Supp. 2d 841, 849 (E.D. Tex. 1999)); *Rodriguez*, 252 F. Supp. 2d at 336.

#### 1. Dr. Stuart's Evidence Relates to the Applicable Time

Here, the Appeals Council ultimately rejected Dr. Stuart's evidence, expressly finding that Dr. Stuart's treatment notes did not relate to the applicable time period [TR 1-2]. The Appeals Council's finding in this regard is not accurate. While Dr. Stuart's report was admittedly made after the ALJ's hearing decision, Dr. Stuart reported in the diabetes mellitus questionnaire that the physical limitations she found existed as early as March of 2012 – within the time period for which disability benefits were denied. *Id*. at 2179. Specifically, Dr. Stuart was asked to provide the earliest possible date to which the symptoms and limitations described by the questionnaire apply, and Dr. Stuart wrote in response, "March 2012." *Id*. Thus,

---

[3] Plaintiff also argues that the issue of "materiality" is not before the Court because the Appeals Council admitted the new evidence, thereby conceding its relevance to the ALJ's decision [Dkt. 10 at 7-8 (citing *Williams*, 2013 WL 1282517, at *3)]. While this argument has been made in multiple filings now before the Court, after full review of the argument presented and the relevant case law, the Court does not agree that *Williams* dispenses with the materiality test. In *Williams*, the Court found that the Appeals Council accepted new evidence into the record without conducting the required analysis, which in turn, required the Court to consider the evidence as part of the record on appeal to determine if the ALJ's decision was supported by substantial evidence. *Williams*, 2013 WL 1282517, at *3. However, the Court continued to conduct the full "materiality" analysis in its opinion (to the extent the Parties had not already agreed on some portions of the evidence). *Id*. Thus, *Williams* does not stand for the proposition that because the evidence is accepted into the record by the Appeals Council, then the Court need not conduct any analysis on this prong or step. Accordingly, the Court conducts such analysis herein.

Dr. Stuart's opinions are "retrospective medical diagnoses [that] can be used to establish disability onset dates…" *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997); *see also McLendon v. Barnhart*, 184 F. App'x 432, 432 (5th Cir. 2006) (noting that retrospective opinions can prove a prior disability where opinion clearly refers to the relevant period of disability and not the current status); *Shields v. Commissioner*, No. 6:08-CV-00484-MHS-JKG, 2008 WL 8141300, at *9 (E.D. Tex. Dec. 16, 2008) (same); *Booker v. Astrue,* No. 3:10-CV-1940-P-BF, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011) ("Retrospective medical opinions are valid."); *Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *4 (N.D. Tex. Feb. 24, 2014) (same).

The Commissioner argues that Dr. Stuart's evidence does not clearly refer to the relevant period of disability; however, such argument ignores that Dr. Stuart expressly answered "March 2012," in response to a question asking "[w]hat is the earliest date that the description of symptoms and limitation in this questionnaire applies?" [TR 2179]. This Court has already addressed a similar situation in *Negus*, where the Appeals Council considered an examining physician's opinions, but rejected them finding that the new information was about a later time. *Negus v. Commissioner of Soc. Sec.*, No. 4:12-cv-643, 2014 WL 1267259, at *8 (E.D. Tex. March 27, 2014). The Court held that the examining physician "clearly stated that his opinions applied to the time period relevant Plaintiff's claims, therefore the opinions were material and should be considered as part of the record." *Id*. The Court further noted in *Negus* that the fact that the examining physician's opinions were completed after the ALJ's decision was immaterial, since the physician specifically noted his opinion reflected the claimant's limitations during the relevant time period, and found the Appeals Council erred in failing to consider the evidence. *Id*. Accordingly, the Court finds herein, as in *Negus*, that the Appeals Council

improperly rejected Dr. Stuart's opinion as immaterial and failed to perform the analysis required when evaluating source opinions. *Id*. at *9; *see also Walker v. Comm'r of Soc. Sec. Admin*., No. 4:12-cv-324, 2014 WL 1267246, at *5-6 (E.D. Tex. Mar. 27, 2014) (remanding where Appeals Council considered medical source statement "about a later time."); *Williams*, 2013 WL 1282517, at *3 ("the standard boilerplate language used to deny Plaintiffs' request for review does not show good reason for the determination of the weight given by the Appeals Council to the new evidence."). On this basis alone, remand is required so that the Appeals Council and/or ALJ may determine the appropriate weight to be given to Dr. Stuart's opinions. Because the Court finds that Dr. Stuart's opinions, by her own report, applied to the relevant time period, "the Appeals Council was required to review the evidence upon the appropriate standard." *Negus*, 2014 WL 1267259, at *8. The Appeals Council improperly rejected Dr. Stuart's opinion as immaterial and did not perform the analysis required when evaluating source opinions. *Id*. at *9. This Court cannot reweigh the evidence, try the issue de novo, or substitute its judgment on the ultimate issue of disability for that of the Commissioner. *Newton*, 209 F.3d at 452. Thus, upon remand, the Commissioner must determine the credibility of the medical sources, and determine weight to be given to such opinions. *Negus*, 2014 WL 1267259, at *9; *Greenspan*, 38 F.3d at 237.

Moreover, the Commissioner's argument to the contrary further ignores that Dr. Stuart is Plaintiff's primary and treating physician. A treating physician's (such as Dr. Stuart) opinion may be entitled to great weight, and precedent dictates that "an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth by the applicable regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Walker*, 2014 WL 1267246, at *5-6 (holding that medical

improperly rejected Dr. Stuart's opinion as immaterial and failed to perform the analysis required when evaluating source opinions. *Id*. at *9; *see also Walker v. Comm'r of Soc. Sec. Admin*., No. 4:12-cv-324, 2014 WL 1267246, at *5-6 (E.D. Tex. Mar. 27, 2014) (remanding where Appeals Council considered medical source statement "about a later time."); *Williams*, 2013 WL 1282517, at *3 ("the standard boilerplate language used to deny Plaintiffs' request for review does not show good reason for the determination of the weight given by the Appeals Council to the new evidence."). On this basis alone, remand is required so that the Appeals Council and/or ALJ may determine the appropriate weight to be given to Dr. Stuart's opinions. Because the Court finds that Dr. Stuart's opinions, by her own report, applied to the relevant time period, "the Appeals Council was required to review the evidence upon the appropriate standard." *Negus*, 2014 WL 1267259, at *8. The Appeals Council improperly rejected Dr. Stuart's opinion as immaterial and did not perform the analysis required when evaluating source opinions. *Id*. at *9. This Court cannot reweigh the evidence, try the issue de novo, or substitute its judgment on the ultimate issue of disability for that of the Commissioner. *Newton*, 209 F.3d at 452. Thus, upon remand, the Commissioner must determine the credibility of the medical sources, and determine weight to be given to such opinions. *Negus*, 2014 WL 1267259, at *9; *Greenspan*, 38 F.3d at 237.

Moreover, the Commissioner's argument to the contrary further ignores that Dr. Stuart is Plaintiff's primary and treating physician. A treating physician's (such as Dr. Stuart) opinion may be entitled to great weight, and precedent dictates that "an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth by the applicable regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Walker*, 2014 WL 1267246, at *5-6 (holding that medical

improperly rejected Dr. Stuart's opinion as immaterial and failed to perform the analysis required when evaluating source opinions. *Id*. at *9; *see also Walker v. Comm'r of Soc. Sec. Admin*., No. 4:12-cv-324, 2014 WL 1267246, at *5-6 (E.D. Tex. Mar. 27, 2014) (remanding where Appeals Council considered medical source statement "about a later time."); *Williams*, 2013 WL 1282517, at *3 ("the standard boilerplate language used to deny Plaintiffs' request for review does not show good reason for the determination of the weight given by the Appeals Council to the new evidence."). On this basis alone, remand is required so that the Appeals Council and/or ALJ may determine the appropriate weight to be given to Dr. Stuart's opinions. Because the Court finds that Dr. Stuart's opinions, by her own report, applied to the relevant time period, "the Appeals Council was required to review the evidence upon the appropriate standard." *Negus*, 2014 WL 1267259, at *8. The Appeals Council improperly rejected Dr. Stuart's opinion as immaterial and did not perform the analysis required when evaluating source opinions. *Id*. at *9. This Court cannot reweigh the evidence, try the issue de novo, or substitute its judgment on the ultimate issue of disability for that of the Commissioner. *Newton*, 209 F.3d at 452. Thus, upon remand, the Commissioner must determine the credibility of the medical sources, and determine weight to be given to such opinions. *Negus*, 2014 WL 1267259, at *9; *Greenspan*, 38 F.3d at 237.

Moreover, the Commissioner's argument to the contrary further ignores that Dr. Stuart is Plaintiff's primary and treating physician. A treating physician's (such as Dr. Stuart) opinion may be entitled to great weight, and precedent dictates that "an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth by the applicable regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Walker*, 2014 WL 1267246, at *5-6 (holding that medical

source statement, although dated after ALJ decision, was relevant because it state limitations began before ALJ's determination). Indeed, the regulations require the Commissioner to apply certain factors when reviewing a treating physician's opinion, such as length of treatment relationship, frequency of examination, nature and extent of treatment relationship, supportability of the medical opinion, consistency, and specialization of the physician. *See* 20 C.F.R. § 404.1527(c)(2) (listing factors to consider). By contrast, medical opinions expressed via "check-the-box" forms (such as portions of Dr. Stuart's questionnaire) without additional explanation may be given less weight by the Commissioner in making its disability determinations. *Rollins v. Astrue*, 464 F. App'x 353, 357 n.5 (5th Cir. 2012) (noting that "check-the-box" forms without additional explanations might be given less weight, but reserving that determination for the ALJ); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations…"); *Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at *9 (S.D. Tex. Jan. 14, 2015) (finding a treating physician's unsupported, check-the-box questionnaire regarding disability typifies the "brief and conclusory" statements that an ALJ may disregard under the good cause exceptions to the treating physicians rule); *see also* 20 C.F.R. § 404.1527(d)(3) (providing that the ALJ can change the weight given to a medical opinion based on whether the opinion is well supported or conclusory). It is undisputed that neither the Appeals Council nor the ALJ stated what weight should be given to the opinions of Dr. Stuart [TR 1-2]. Such a determination regarding the weight to be given to Dr. Stuart's opinion is not for this Court to make, since the Court cannot weigh the evidence, try the issue de novo, or substitute its

judgment on the ultimate issue of disability for that of the Commissioner. *Williams*, 2013 WL 1282517, at *4 (citing *Newton*, 209 F.3d at 452); *Walker*, 2014 WL 1267246, at *5-6.

### *2. Dr. Stuart's Opinions Could Materially Alter Disability Determination*

In addition, Dr. Stuart's evidence directly contradicts several of the ALJ's findings and would potentially materially alter the outcome of this case. *Rodriguez*, 252 F. Supp. 2d at 336. More specifically, the Court notes that Dr. Stuart's new evidence suggests greater physical limitations than those included by the ALJ in his findings and conclusions regarding Plaintiff's residual functional capacity [TR 15-23]. After considering Plaintiff's medical records, the ALJ concluded that Plaintiff could perform a full range of sedentary work. *Id*. at 17. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools… a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). In contrast, Dr. Stuart's new evidence conflicts with this finding, noting that Plaintiff's prognosis is "poor for meaningful improvement." *Id*. at 2176. Dr. Stuart further reported that Plaintiff's chest pain and other symptoms would frequently interfere with his attention and concentration needed to perform even simple tasks, and that Plaintiff was limited to sitting for less than two hours and walking/standing for less than two hours over an eight-hour period, and he could only sit or stand for ten minutes at a time. *Id*. at 2176-77. Dr. Stuart opined that Plaintiff would require unscheduled breaks during an eight-hour day, and estimated Plaintiff would likely miss more than four days of work per month as a result of his impairments. *Id*. at 2178-79. Dr. Stuart also recommended Plaintiff avoid all exposure to cigarette smoke, and moderate exposure to extreme cold, soldering fluxes, solvents and cleaners, fumes, odors, gases, dust, and chemicals. *Id*. at 2179. None of these potential limitations were included by the ALJ in his residual functional

capacity finding, and were not addressed by the hypothetical questions posed to the vocational expert at hearing. *Id*. at 15-23. As such, Dr. Stuart's new evidence is inconsistent with the ALJ's residual functional capacity finding because all of these potential limitations are at odds with a residual functional capacity of all sedentary work. Among the rules and regulations that apply to both the ALJ and Appeals Council is the obligation to "evaluate every medical opinion we receive" under Section 404.1527, and to "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c), (c)(2); *Newton*, 209 F.3d at 456. The Commissioner does not explain how the ALJ's decision and/or the Appeals Council's statements comport with this requirement [*see generally* Dkt. 11].

The Commissioner argues that Dr. Stuart's questionnaire has little probative value with respect to the relevant period covered by the ALJ's decision because Dr. Stuart never reported such limitations or clinical findings in her contemporaneous treatment records [Dkt. 11 at 6-7]. Specifically, the Commissioner contends that Dr. Stuart's February 21, 2013 treatment notes indicate that Plaintiff denied fatigue, vision change, vision loss, chest pain, nausea, vomiting, musculoskeletal problems or joint pain, heart problems, or psychiatric problems [TR at 2094-95]. The Commissioner states that Dr. Stuart failed to explain the change in Plaintiff's symptoms from February of 2013, to May, when Dr. Stuart completed her questionnaire. *Id*. Again to reiterate, this Court cannot weigh the evidence, try the issue de novo, or substitute its judgment on the ultimate issue of disability for that of the Commissioner. *Williams*, 2013 WL 1282517, at *4 (citing *Newton*, 209 F.3d at 452). Thus, the Court cannot consider the credibility and/or the weight to be given to the new evidence submitted by Dr. Stuart. By way of response, Plaintiff notes that his symptoms were known to wax and wane over time, and that the Commissioner's

position takes an overly selective view of the medical records in evidence. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."). The Court agrees that there are other instances in the record where Plaintiff's symptoms of nausea, poor diabetic control, poor hypertension control, chest pain, vomiting, and elevated blood pressure were indicated by the medical evidence. [TR at 631, 689, 327, 1798, 1802]. Thus, the Court agrees that Dr. Stuart's evidence should be considered and properly weighed by the Appeals Council and/or ALJ, since it is not the position of the Court to do so at this juncture. Accordingly, the Court finds Plaintiff new evidence is both "new" and "material," and thus, should have been considered by the Appeals Council upon its review.

### B. *Addressing Commissioner's Arguments*

The Commissioner makes two additional arguments regarding the Appeals Council's consideration of such evidence, which the Court turns to now: that the Appeals Council was not required to (1) perform a factual assessment of the evidence; and (2) provide a detailed explanation of the weight given to newly submitted evidence [Dkt. 11 at 5]. More specifically, the Commissioner contends that the Appeals Council was not required to perform a factual assessment of the evidence under 20 C.F.R. § 404.1527(e)(3) because the Appeals Council declined to grant review and did not assume jurisdiction over Plaintiff's appeal [Dkt. 11 at 5]. The Commissioner claims that her interpretation is supported by an unpublished district court opinion, *Green v. Astrue*; however, *Green* actually undermines the Commissioner's argument. No. 3:07-CV-0291-L, 2008 WL 3152990, at *7 (N.D. Tex. July 30, 2008). In *Green*, the court considered whether the Appeals Council is required to consider new evidence submitted for the first time to the Appeals Council, and the court found remand was appropriate because "the

Appeals Council should have considered the evidence as an administrative law judge would." *Id.* The court then remanded the decision for further consideration of the new evidence, because the Appeals Council failed to consider such evidence, state why it rejected the claimant's additional evidence, and state what weight it gave the opinion of the claimant's treating physician. *Id*. at *9. The same result is required herein. As previously discussed, the regulations require the Appeals Council to consider all evidence in the record, as well as any new and material evidence it receives which relates to the period on or before the date of the ALJ's decision, in deciding whether to grant a claimant's request for review. 20 C.F.R. § 404.976(b); *see also Williams*, 2013 WL 1282517, at *3 (citing *Rodriguez*, 252 F. Supp. 2d at 336). The Appeals Council failed to properly consider the new evidence submitted by Plaintiff, and because the evidence is new and material, the Court must remand the decision for further consideration.

Against that backdrop this Court turns to the Commissioner's second argument, the Commissioner argues that the Appeals Council need not provide a detailed explanation of the weight given to newly submitted evidence [Dkt. 11 at 5]. The Court agrees that the regulations do not require the Appeals Council to perform a detailed analysis of its decision regarding the weight to be given to new evidence. *See Ellis v. Commissioner of Soc. Sec. Admin.*, No. 4:12CV455, 2014 WL 1234213, at *5 (E.D. Tex. March 25, 2014). However, as previously acknowledged, current regulations do require the Appeals Council to "follow the same rules for considering opinion evidence as administrative law judges follow" when the Appeals Council "makes a decision." 20 C.F.R. § 404.1627(e)(3). The applicable regulations also require the Appeals Council to give an explanation for the weight given to the opinion of Plaintiff's treating physician. *See Martinez ex rel. T.P. v. Colvin*, No. 2:12-CV-049, 2013 WL 1194234, at *4 (N.D.

Tex. March 7, 2013); *Stewart v. Astrue*, No. 7-07-CV-052-BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept. 18, 2008). Here, the Appeals Council's explanation was only an incorrect assertion that Dr. Stuart's evidence did not relate to the applicable time period [TR 1-2]. Accordingly, such an assertion is insufficient to satisfy the Commissioner's obligations under the regulations, and the Court finds that it must remand the Commissioner's decision for further consideration.[4]

Although the Court certainly does not require and/or suggest the ALJ reach a different and/or opposite result, the Court finds that given the additional physical limitations described by Dr. Stuart (Plaintiff's treating physician), Dr. Stuart's new evidence could potentially alter the outcome of the disability determination and Plaintiff's ability to perform other jobs that exist in the national economy. Accordingly, the Court finds this case must be remanded.

## CONCLUSION

Based on the foregoing, the Court finds this case should be remanded for further review so that the Commissioner may evaluate and weigh the new medical evidence submitted by Plaintiff, specifically the medical records of Dr. Stuart, in its disability determination.

It is therefore **ORDERED** that the decision of the Commissioner is hereby **REMANDED** for further proceedings consistent with this opinion.

**SIGNED this 4th day of February, 2016.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the Court has determined that remand is appropriate based on the new evidence submitted to the Appeals Council consisting of Dr. Stuart's additional records and questionnaire, the Court need not (and does not) consider Plaintiff's second argument that substantial evidence does not support the residual functional capacity finding of the ALJ that Plaintiff can perform the "full range of sedentary work" [Dkt. 10 at 12-15].